**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CRIMINAL CASE NO. 1:11cr13**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| | ) | |
| | ) | |
| **LOHR EBBIE LOVELAND, JR.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Defendant's Motions to Dismiss for Improper Dismissal of Prior Indictment and Pre-Indictment Delay [Doc. 12], his Motion to Dismiss – Violation of Defendant's Second Amendment Rights [Doc. 13], and his Motion to Dismiss – Violation of the Tenth Amendment [Doc. 22].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, United States Magistrate Judge Dennis L. Howell was designated to consider the motions and to submit recommendations for their dispositions.

On September 7, 2011, the Magistrate Judge filed a Memorandum and Recommendation in which he recommended denying the motions to dismiss.

[Doc. 30]. The Defendant timely filed Objections. [Doc. 31].

## PROCEDURAL HISTORY

On May 29, 2008, the Defendant was indicted in Criminal Case No. 1:08cr54 and charged with one count of being a felon in possession of a firearm, a 9 millimeter Glock pistol, in violation of 18 U.S.C. §922(g)(1). [Doc. 12-1]. In September 2008, the Defendant's attorney, who is the same attorney representing the Defendant in this case, and the Assistant United States Attorney (AUSA), Nicks Williams,[1] filed a joint motion to continue the case from the trial calendar. [Doc. 12-2]. In support of that motion, both attorneys advised the Court that items found inside the Defendant's residence were being analyzed for the presence of explosive material and other firearms inside the residence were being analyzed to determine whether they were fully automatic. [Id.]. Counsel also acknowledged that the results of those analyses would determine whether additional charges would be sought and/or impact the ultimate sentence. [Id.]. The trial was thereupon continued.

In November 2008, the AUSA moved to continue the case from the November trial calendar based on the Defendant's decision not to enter a plea of guilty to the one count Bill of Indictment. [Doc.12-3]. The AUSA reported that over thirty firearms, hundreds of rounds of ammunition and an explosive

---

[1]AUSA Williams died in November 2009.

device had been found at the Defendant's residence. [Id.]. He also noted that one of those firearms had been examined and determined to be a machine gun. [Id.]. As a result, he sought to supersede the Bill of Indictment in order to add new charges. [Id.]. The motion was granted and the case was continued. [Doc. 12-4].

The Defendant's defense in the case was that the firearms at issue were purchased and owned by his deceased wife, Kathy Loveland. [Doc. 12-5]. Indeed, the Defendant was arrested in that case when he called emergency responders due to his wife's suicide and the gun at issue was found inside their home.[2] [Doc. 31]. On December 30, 2008, the AUSA moved to dismiss the Bill of Indictment without prejudice because the case agent assigned to the case was on maternity leave until March 2009 and because recent discovery concerning the firearms and explosives at issue "warrant[ed] a fresh look at the charges in this case." [Doc. 12-6]. During a teleconference among the AUSA, defense counsel and the Administrative Assistant for Hon. Lacy H. Thornburg, the AUSA stated that should the charges be presented again to a Grand Jury, he would personally notify defense counsel in advance along with any plea offer that might be proposed.[3] [Id.].

---

[2]The Defendant's wife committed suicide by jumping from the second floor of their home. [Doc. 31].

[3]Judge Thornburg has since retired.

The next day, Judge Thornburg dismissed the Bill of Indictment without prejudice. [Doc. 12-7]. The Defendant did not object either to the motion to dismiss or the actual dismissal of the indictment. Indeed, the fact that a teleconference among counsel and the Court's staff occurred indicates that defense counsel consented to the motion.

In February 2011, the Defendant was indicted in this present case. [Doc. 1]. In the pending indictment, the Defendant has been charged with possessing a machine gun, in violation of 18 U.S.C. §922(o)(1), possession of a machine gun which had not been registered, in violation of 26 U.S.C. §§5861(d) & 5845, possession of explosives by a convicted felon, in violation of 18 U.S.C. §842(i)(1) and possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §922(g)(1).[4] [Id.]. In support of the pending motions to dismiss, the Defendant attached exhibits which have been referenced above. No other evidence was submitted.

## STANDARD OF REVIEW

A district court reviews specific objections to a Memorandum and Recommendation under a de novo standard. 28 U.S.C. §636(b). "Parties filing objections must specifically identify those findings objected to." Battle

---

[4]The Defendant's convicted felon status is based on a prior federal conviction; thus, United States v. Simmons, 649 F.3d 237 (4th Cir. 2011), is not implicated. [Doc. 1].

4

v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir.1987), overruled on other grounds Douglass v. United Ervs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996). If a party makes only general objections, de novo review is not required. Wells v. Shriners Hospital, 109 F.3d 198, 200 (4th Cir. 1997)(boilerplate objections will not avoid the consequences of failing to object altogether). "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (emphasis in original), cert. denied 551 U.S. 1157, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007). Likewise, merely reiterating the same arguments made in the pleading submitted to the Magistrate Judge does not warrant de novo review. Id.; Veney v. Astrue, 539 F.Supp.2d 841, 846 (W.D.Va. 2008). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Midgette, 478 F.3d at 622.

Here, the Defendant has concluded each objection with the comment

that he "further objects to the recommendation contained in the Memorandum and Recommendation with regard to this issue." [Doc. 31 at 3-5]. This is not a specific objection but merely an attempt to bootstrap arguments made in previously filed briefs. As a result, de novo review of such comments is not warranted.

The Court notes, moreover, that the Defendant does not object to the factual findings made by the Magistrate Judge. [Id. at 1].

## DISCUSSION

**Prosecutorial Bad Faith and Prejudice to the Defendant**

The Defendant's first Objection is to the Magistrate Judge's conclusion that the dismissal of the Bill of Indictment in Criminal Case 1:08cr54 was not done in bad faith. As noted by the Magistrate Judge, a "'trial court has little discretion in considering a government motion to dismiss made pursuant to [Rule 48].[5]'" Rice v. Rivera, 617 F.3d 802, 811 (4th Cir. 2010) (quoting United States v. Perate, 719 F.2d 706, 710 (4th Cir. 1983)). Indeed, a district court "must grant a prosecution's [Rule 48] motion unless it is clearly contrary to manifest public interest." United States v. Kellam, 568 F.3d 125, 133 (4th Cir. 2009), cert. denied __ U.S. __, 130 S.Ct. 657, 175 L.Ed.2d 501 (2009); United

---

[5]Rule 48 of the Federal Rules of Criminal Procedure provides that the "government may, with leave of court, dismiss an indictment[.]" Fed.R.Crim.P. 48(a).

6

States v. Smith, 55 F.3d 157, 159 (4th Cir. 1995).

> Whether granting a Rule 48 motion would be clearly contrary to manifest public interest "should be decided by determining whether the prosecutor acted in good faith at the time he moved for dismissal." Put succinctly, a Rule 48 motion "that is not motivated by bad faith is not clearly contrary to manifest public interest and it *must* be granted." Moreover, "[t]he disservice to the public interest must be found, if at all, in the motive of the prosecutor." Examples of bad faith have been circumscribed to "include the prosecutor's acceptance of a bribe, personal dislike of the victim, and dissatisfaction with the jury impaneled."[6]

Rice, 617 F.3d at 811 (quoting Smith, 55 F.3d at 159-60) (emphasis in original).

The Defendant claims that the prosecutor continued the case in order to further investigate and analyze items found at the Defendant's residence but acted in such a dilatory manner that he could not timely supersede the indictment. As a result, he argues, the AUSA moved to dismiss the indictment so that he could later re-indict, a procedural mechanism which in and of itself shows bad faith. A lack of preparedness by a prosecutor, however, is not alone indicative of bad faith. United States v. Goodson, 204 F.3d 508 (4th Cir. 2000); Government of the Virgin Islands v. Fraser, 2004 WL 241509 (D.V.I. 2004) (government's being unprepared for trial not equal to bad faith); United States v. Doody, 2002 WL 562644 (S.D.N.Y. 2002) (failure to adequately

---

[6]It is undisputed that none of these examples are present in this case.

prepare proper choice of venue not indicative of bad faith).

This argument, moreover, overlooks the plain language of the second motion to continue in which the AUSA acknowledged that the Defendant's decision not to plead guilty to one count of violating §922(g)(1) had caused him to reconsider whether he should supersede the indictment. As a matter of law, there is no basis on which to infer a bad faith motive for a prosecutor's decision to pursue a superseding indictment after a defendant declines to plead guilty. United States v. Drummond, 416 F. App'x 284 (4th Cir. 2011) (citing United States v. Wilson, 262 F.3d 305, 315 (4th Cir. 2001)). The Court finds that the motion to dismiss was based on the same consideration as the earlier motion to continue; that is, to pursue the investigation in order to determine whether to bring additional charges. This is not indicative of bad faith because "it is the duty of the United States Attorney not simply to prosecute but to do justice" which, in this case, meant further investigation. Smith, 55 F.3d at 160; accord United States v. Jacobo-Zavala, 241 F.3d 1009, 1012-13 (8th Cir. 2001) (further investigation and strategic decisions not indicative of bad faith). Indeed, the presumption is that the prosecutor acted in good faith in the absence of clear evidence to the contrary. Id. No such evidence has been presented here and the Court rejects the Defendant's Objection. United States v. Eaves, 68 F. App'x 788 (9th Cir. 2003) (reversing

district court which refused to grant dismissal because prosecutor advised dismissal would allow the cure of defects in the original indictment); United States v. Sprofera, 299 F.3d 725 (8th Cir.2002) (strategic decision to dismiss not indicative of bad faith); United States v. Palomares, 119 F.3d 556 (7th Cir. 1997) (dismissal because government could not locate witness not indicative of bad faith).

Nor can the Court overlook the Defendant's failure to object, at the time, to the dismissal of the indictment. United States v. Decator, 112 F.3d 511 (4th Cir. 1997), cert. denied 522 U.S. 937, 118 S.Ct. 347, 139 L.Ed.2d 270 (1997) (although defendant initially objected to dismissal he eventually consented and never objected to the sufficiency of the original indictment; held, prosecutor acted in good faith). Where a defendant does not object to the government's motion to dismiss without prejudice, he has waived his right to object to the government's motives at a later time. Palomares, 119 F.3d at 559 (citing United States v. Wellborn, 849 F.2d 980, 985 (5th Cir. 1988)); United States v. Reyes, 102 F.3d 1361, 1367 (5th Cir. 1996). As noted by the Magistrate Judge this is another reason to deny the motions to dismiss, a reason as to which no Objection was raised. On this ground alone, then, the motion must be denied.

The Magistrate Judge also recommended denial of the motion to

9

dismiss based on pre-indictment delay. The Defendant objects to that recommendation, claiming that the delay has resulted in prejudice because in the interim, his mother, Hazel Loveland, died. Thus, his ability to call her as a witness has been defeated. His mother, he claims, could have testified as to the ownership of the firearms and as to the reason why they had been placed in the care of the Defendant's wife. [Doc. 31 at 2].

"[D]ue process is not violated simply because the defendant is indicted after a substantial [ ] delay." United States v. Stinson, 594 F.2d 982, 984 (4th Cir. 1979) (citing United States v. Lovasco, 431 U.S. 783, 796, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)). A constitutional violation occurs only "when the delay actually prejudices the conduct of the defense and the government has intentionally delayed to gain some tactical advantage over the defendant or to harass him." Id. A defendant seeking to dismiss an indictment based on pre-indictment delay must first show actual prejudice. Id. This requires a showing that the defendant has been "meaningfully impaired in his ability to defend against the charges to such an extent that the disposition of the [ ] proceeding was likely affected." Jones v. Angelone, 94 F.3d 900, 907 (4th Cir. 1996) (citing United States v. Marion, 404 U.S. 307, 325-26, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)).

The Defendant claims that the death of his mother has eliminated his

ability to call her as a witness to testify that some of the firearms in the his home belonged to her and that others were kept in a gun safe by his wife. [Doc. 12 at 16]. The Magistrate Judge concluded that the loss of such testimony was not prejudicial to the Defendant because it goes to ownership and actual possession. The Government, however, is not required to prove either.

> To show a §922(g)(1) violation, the government must prove three elements: (i) that the defendant was a convicted felon at the time of the offense; (ii) that he voluntarily and intentionally possessed a firearm; and (iii) that the firearm traveled in interstate commerce at some point. *§922(g)(1) does not require proof of actual or exclusive possession*; constructive or joint possession is sufficient. The Government may prove constructive possession by demonstrating that the defendant exercised, or had the power to exercise, dominion and control over the item.

United States v. Gallimore, 247 F.3d 134, 136-37 (4th Cir. 2001) (internal citations and quotations omitted) (emphasis added).

Evidence of ownership by the Defendant's mother or wife does not refute the allegation that Defendant *possessed* the firearms. The Government may rely on circumstantial evidence to show that the guns found in the Defendant's residence (whether or not located inside a gun safe) were within the constructive or joint possession of the Defendant. Id. (guns located in gun safe constructively possessed by defendant); United States v. Ubele, 215 F. App'x 971 (11th Cir. 2007) (guns located in gun safes possessed), cert. denied

11

551 U.S. 1108, 127 S.Ct. 2924, 168 L.Ed.2d 252 (2007). Moreover, a "person has constructive possession over contraband when he has ownership, dominion, or control over the contraband itself *or over the premises ...in which it was concealed*." United States v. Armstrong, 187 F.3d 392, 396 (4th Cir. 1999) (emphasis added). It is undisputed that the firearms at issue were discovered in the Defendant's home. [Doc. 31 at 3]. The Government therefore may rely on circumstantial evidence that the Defendant had control over the premises in which the gun safe and firearms were found. Armstrong, 187 F.3d at 396; United States v. Ridley, 381 F. App'x 247 (4th Cir. 2010) (guns found in trunk of defendant's car constructively possessed because he had control over vehicle); United States v. Pender, 261 F. App'x 576 (4th Cir. 2008) (circumstantial evidence sufficient), cert. denied 553 U.S. 1025, 128 S.Ct. 2098, 170 L.Ed.2d 828 (2008); United States v. Cox, 218 F. App'x 257 (4th Cir. 2007) (gun found inside bag on defendant's front porch constructively possessed). The Defendant has not been "meaningfully impaired in his ability to defend against the charges to such an extent that the disposition of the [ ] proceeding was likely affected" because, regardless of who owned the firearms, they were located in the Defendant's home, a place over which he had dominion and control. Jones, 94 F.3d at 907. The Government may therefore prove the element of possession by showing constructive or joint

possession and the motion to dismiss must be denied.[7]

**Second Amendment Challenge**

The Defendant concedes that, in recommending denial of his motion to dismiss, the Magistrate Judge properly relied on the holding in United States v. Chester, 628 F.3d 673 (4th Cir. 2010). [Doc. 31 at 4]. He objects, however, to the Magistrate Judge's conclusion that §922(g)(1), as applied to this particular defendant, is constitutional.

In Chester, the Fourth Circuit assumed that a convicted felon was "entitled to some measure of Second Amendment protection to keep and possess firearms in his home" and thus found the issue was whether the government could justify under an intermediate level of scrutiny the burden imposed on that right. Id.. The case was remanded to the District Court for further proceedings. Id. The Defendant does not object to the application of an intermediate scrutiny standard. [Doc. 31 at 4]. Nor does he object to the conclusion that protecting the safety of the public at large is a substantial government objective. [Id.]. His only objection is to the conclusion that the statute "operates as a 'reasonable fit' for these objectives when it criminalizes the passive possession of firearms by a person (the defendant herein) with no

---

[7]The Defendant actually conceded this fact by acknowledging in the Objections that he passively possessed the firearms at issue. [Doc. 31 at 4].

13

criminal history of violent or aggressive conduct, within his own home." [Id.].

On September 22, 1998, the Defendant was convicted of possession of an unregistered firearm in violation of 26 U.S.C. §5861(d). [Criminal Case No. 3:97cr304]. He does not dispute that his status as a convicted felon results from that prosecution. "Not all firearms must be registered under 26 U.S.C. §5861(d). Only those firearms must be registered that Congress has found to be inherently dangerous and generally lacking usefulness, except for violent and criminal purposes[.]" United States v. Dunn, 946 F.2d 615, 621 (9th Cir. 1991), cert. denied 502 U.S. 950, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991).

> The possession of an unregistered firearm ..., even by a non-felon, involves a ... blatant disregard for law and a substantial risk of improper physical force. An individual who keeps a firearm of that kind for lawful purposes will recognize the need to register the weapon as evidence of lawful intent.

Id. (discussing detention hearing). For this reason the mere possession of an unregistered firearm constitutes the possession of an inherently dangerous weapon, which in turn presents a substantial risk of physical injury to others. United States v. Lane, 252 F.3d 905, 907 (7th Cir. 2001) (discussing detention); United States v. Powers, 318 F.Supp.2d 339, 344-45 (W.D.Va. 2004) (collecting cases).

Although the Defendant describes himself as "a person ... with no criminal history of violent or aggressive conduct," his prior conviction was for

criminal history of violent or aggressive conduct, within his own home." [Id.].

On September 22, 1998, the Defendant was convicted of possession of an unregistered firearm in violation of 26 U.S.C. §5861(d). [Criminal Case No. 3:97cr304]. He does not dispute that his status as a convicted felon results from that prosecution. "Not all firearms must be registered under 26 U.S.C. §5861(d). Only those firearms must be registered that Congress has found to be inherently dangerous and generally lacking usefulness, except for violent and criminal purposes[.]" United States v. Dunn, 946 F.2d 615, 621 (9th Cir. 1991), cert. denied 502 U.S. 950, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991).

> The possession of an unregistered firearm ..., even by a non-felon, involves a ... blatant disregard for law and a substantial risk of improper physical force. An individual who keeps a firearm of that kind for lawful purposes will recognize the need to register the weapon as evidence of lawful intent.

Id. (discussing detention hearing). For this reason the mere possession of an unregistered firearm constitutes the possession of an inherently dangerous weapon, which in turn presents a substantial risk of physical injury to others. United States v. Lane, 252 F.3d 905, 907 (7th Cir. 2001) (discussing detention); United States v. Powers, 318 F.Supp.2d 339, 344-45 (W.D.Va. 2004) (collecting cases).

Although the Defendant describes himself as "a person ... with no criminal history of violent or aggressive conduct," his prior conviction was for

criminal history of violent or aggressive conduct, within his own home." [Id.].

On September 22, 1998, the Defendant was convicted of possession of an unregistered firearm in violation of 26 U.S.C. §5861(d). [Criminal Case No. 3:97cr304]. He does not dispute that his status as a convicted felon results from that prosecution. "Not all firearms must be registered under 26 U.S.C. §5861(d). Only those firearms must be registered that Congress has found to be inherently dangerous and generally lacking usefulness, except for violent and criminal purposes[.]" United States v. Dunn, 946 F.2d 615, 621 (9th Cir. 1991), cert. denied 502 U.S. 950, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991).

> The possession of an unregistered firearm ..., even by a non-felon, involves a ... blatant disregard for law and a substantial risk of improper physical force. An individual who keeps a firearm of that kind for lawful purposes will recognize the need to register the weapon as evidence of lawful intent.

Id. (discussing detention hearing). For this reason the mere possession of an unregistered firearm constitutes the possession of an inherently dangerous weapon, which in turn presents a substantial risk of physical injury to others. United States v. Lane, 252 F.3d 905, 907 (7th Cir. 2001) (discussing detention); United States v. Powers, 318 F.Supp.2d 339, 344-45 (W.D.Va. 2004) (collecting cases).

Although the Defendant describes himself as "a person ... with no criminal history of violent or aggressive conduct," his prior conviction was for

the possession of an inherently dangerous weapon which by its nature could involve a substantial risk of danger to another person. 18 U.S.C. §16(b). "[T]he government has a substantial interest in providing for the safety of individuals" which has "sometimes [been] described" as compelling. United States v. Masciandara, 638 F.3d 458, 473 (4th Cir. 2011) (citing United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). Indeed, "[i]t is well-established that protecting the safety and lives of citizens and preventing crime is a substantial government objective." United States v. Kirkpatrick, 2011 WL 3204453 **4 (W.D.N.C. 2011) (citations omitted); United States v. Smith, 742 F.Supp.2d 855, 867 (S.D.W.Va. 2010) (there is no question that the government has a substantial interest in preventing gun violence, including gun violence within the home).

> Section 922(g)(1) was enacted as part of the Gun Control Act of 1968, which sought to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society. This goal was accomplished by proscribing gun ownership and possession for certain classes of presumptively dangerous individuals, among them convicted felons. ... Keeping firearms out of the hands of convicted ... felons such as Defendant accomplishes the government's objective of both deterring and reducing [gun]-related violence.
> ...
> It is generally accepted that offending society by committing a crime leads legitimately to the loss of certain rights, such as the right to vote or serve on a jury. Firearms prohibition is also such a forfeited right. This loss of rights serves both as a form of punishment and as an incentive to deter future crimes. Other

15

> than incarceration, there may be no more effective deterrent to crime than the threat of the loss of firearms rights.

United States v. Lunsford, 2011 WL 145195 **6-7 (S.D.W.Va. 2011) (internal citations and quotations omitted).

In light of the nature of the Defendant's prior firearms conviction and the nature of the charges in this present matter, the Defendant's challenge pursuant to the Second Amendment is without merit. He is currently charged with the possession of a machine gun, possession of a machine gun which had not been registered, possession of explosives by a convicted felon, and possession of firearms and ammunition by a convicted felon. Indeed, an arsenal of weapons was alleged to be in the Defendant's residence. The government's substantial interest in preventing gun violence extends to preventing such behavior, even within one's own home. Smith, 742 F.Supp.2d at 867; United States v. Williams, 616 F.3d 685, 693 (7th Cir. 2010) ("Williams, as a violent felon, is not the ideal candidate to challenge the constitutionality of §922(g)(1)"), cert. denied __ U.S. __, 131 S.Ct. 805, 178 L.Ed.2d 532 (2010). The firearms, ammunition and explosives with which the Defendant now stands charged "form a lethal combination that can lead to violence." Kirkpatrick, 2011 WL 3204453 **4. (internal quotation omitted). Indeed, by enacting §922(g)(1), "Congress focused on the nexus between violent crime and the possession of a firearm by any person with a criminal

16

record." Lewis v. United States, 445 U.S. 55, 66, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (internal quotation and citation omitted). "Therefore, §922(g)(1)'s permanent disarmament of felons, such as Defendant, is a reasonable means of achieving the government's objective of protecting the safety of citizens and deterring future violence and crime." Id.; Williams, 616 F.3d at 692-93 ("the government's stated objective is to keep firearms out of the hands of violent felons, who the government believes are often those most likely to misuse firearms"). The Court overrules the Defendant's Objection and finds that, as applied to this Defendant, §922(g)(1) is constitutional.

**Tenth Amendment Challenge**

In the pending indictment, the Defendant is charged in Count Four with being a felon in possession of firearms and ammunition. The Defendant claims that this count must be dismissed because the State of North Carolina grants its citizens greater rights to bear firearms than the Second Amendment, and the Tenth Amendment guarantees North Carolina the sovereign authority to do so without derogation thereof by Congress. [Doc. 31 at 5]. The Magistrate Judge's conclusion, he argues, that the regulation of firearms provided in §922(g) does not infringe on North Carolina's sovereignty "fails to appreciate the fact that the defendant's firearms rights are necessarily dictated by the sovereign power of the State of North Carolina." Id.

17

> The Tenth Amendment provides that the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people. [Courts] ask two questions to determine whether a statute violates [the Tenth Amendment]. First, whether the regulation it embodies is within Congress' power as being within those enumerated in the Constitution. Second, whether, even if so, the means of regulation employed yet impermissibly infringes upon state sovereignty.

United States v. Bostic, 168 F.3d 718, 723-24 (4th Cir. 1999), cert. denied 527 U.S. 1029, 119 S.Ct. 2383, 144 L.Ed.2d 785 (1999).

The Defendant does not dispute that the regulation embodied in §922(g) is a constitutional exercise of Congress's commerce power and that it has been held to be so by the Fourth Circuit. Id.; [Doc. 31 at 5]. His objection is to the conclusion that the means of regulation does not infringe on North Carolina's sovereignty. [Id.]. In support of his Objection, the Defendant does not cite any authority within this circuit, but merely cites without discussion the North Carolina case of Britt v. State, 363 N.C. 546, 681 S.E.2d 320 (2009). In Britt the Supreme Court of North Carolina held that a state law prohibiting the possession of firearms by a person convicted thirty years earlier of a nonviolent offense violated Art. I §30 of the North Carolina Constitution, as applied to that defendant. Britt, 363 N.C. at 547, 681 S.E.2d at 321. That case says nothing regarding the facts presented here. Defendant can point to no manner in which the means of regulation as applied to the facts of this

18

case infringe on any legislative act or constitutional provision of the State of North Carolina.

The Court of Appeals and numerous District Courts within this circuit have consistently held that the means of regulation provided by §922(g) does not infringe a state's sovereignty and thus, does not violate the Tenth Amendment. Bostic, 168 F.3d at 723-24; accord United States v. Morse, 97 F. App'x 430, 431 (4th Cir. 2004), cert. denied 543 U.S. 979, 125 S.Ct. 486, 160 L.Ed.2d 357 (2004); United States v. Williams, 87 F. App'x 908 (4th Cir. 2004); Ross v. Federal Bureau of Alcohol, Tobacco and Firearms, ___ F.Supp.2d __, 2011 WL 3439412 (D.Md. 2011); United States v. Moore, 2009 WL 1033363 (W.D.N.C. 2009); United States v. Borgo, 2008 WL 4631422 (W.D.N.C. 2008). To the extent that the Defendant claims the statute places "an impermissible burden on the States' ability to determine which among their citizens may own firearms," the Fourth Circuit has "previously rejected a Tenth Amendment challenge to §922(g), finding that the statute is a proper exercise of Congress's commerce power supplementing complementary state legislation." United States v. Pruess, 13 F. App'x 87, 88 (4th Cir. 2001). It is not an "unconstitutional infringement on the powers reserved to the States." Id. The Court therefore rejects the Defendant's Objection.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motions to Dismiss for Improper Dismissal of Prior Indictment and Pre-Indictment Delay [Doc. 12], his Motion to Dismiss – Violation of Defendant's Second Amendment Rights [Doc. 13], and his Motion to Dismiss – Violation of the Tenth Amendment [Doc. 22] are hereby **DENIED**.

Signed: October 13, 2011

Martin Reidinger
United States District Judge